UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> v. ) <br> ) <br> DEVON BROWN, ) <br> Defendant. ) <br> ) | Cr. No. 16-087-JJM-PAS |

## ORDER

Before the Court are a series of pretrial motions filed by both the government and the defendant Devon Brown. The government has charged Mr. Brown in an indictment with one count of knowingly transporting an individual across state lines to participate in prostitution in violation of 18 U.S.C. § 2421 and aiding and abetting in such acts in violation of 18 U.S.C. § 2. Pending before the Court are:

1. Mr. Brown's Motion in Limine to Exclude Photographs of Text Messages (ECF No. 70), to which the government objects (ECF No. 78);

2. Mr. Brown's Motion in Limine to Exclude Irrelevant Backpage.com Postings (ECF No. 73), to which the government objects (ECF No. 81);

3. Mr. Brown's Notice of Intent to Offer A.A.'s[1] Statement (ECF No. 74), and the government's objection thereto and Motion in Limine to Exclude A.A.'s Statement (ECF No. 80);

4. Mr. Brown's Motion in Limine to Exclude Photographs of Mr. Brown with A.A. and Another (ECF No. 75), to which the government objects (ECF No. 82);

5. Mr. Brown's Motion for an Order Directing the Government to be More Specific (ECF No. 76), and the government's response thereto (ECF No. 79); and

---

[1] A.A. is a pseudonym for the person who allegedly was the prostitute in this matter. Publishing her name would serve no purpose.

6. Mr. Brown's Motion in Limine to Exclude the Third Last-Minute Disclosure of Evidence (Cellebrite Report) (ECF No. 83), to which the government objects (ECF No. 84), and Mr. Brown replies (ECF No. 85).

The Court addresses these motions *seriatim*.

1.  Photographs of Text Messages

The government seeks to introduce photographs of text messages from the phone that was in A.A.'s possession at the time of her arrest. The government alleges these photographs show the existence of a prostitution conspiracy between A.A. and Mr. Brown. The government asserts that the messages are between A.A. and Mr. Brown and between A.A. and the undercover police officer who was posing as a customer of A.A. Mr. Brown objects, claiming that the text messages contain impermissible hearsay to which there is no exception, that their introduction would violate his Sixth Amendment right to confrontation, and that they are otherwise not authenticated. The government responds by asserting that the photographs of the text messages are not hearsay because Mr. Brown's coconspirator made them during and in furtherance of the conspiracy.[2] *See* Fed. R. Evid. 801(d)(2)(E).

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay where "[t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Statements are admissible under Rule 801(d)(2)(E) when a court finds it is "more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay

---

[2] The government also states, without elucidating, that the statements are admissible because it does not offer them for the truth of the matter asserted and/or because they are statements of then-existing state of mind.

2

statement was made, and that the statement was in furtherance of the conspiracy." *United States v. Ortiz*, 966 F.2d 707, 715 (1st Cir. 1992) (quoting *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977)).

A review of the evidence the government intends to prove at trial shows that it is more likely than not that A.A. and Mr. Brown were members of a prostitution conspiracy when A.A. authored her text messages, and that those statements are in furtherance of a conspiracy. Thus, the text messages authored by A.A.—to both the undercover agent and Mr. Brown—are not hearsay.[3]

The text messages authored by the undercover agent to A.A., however, may or may not be hearsay. The undercover agent is not a coconspirator, making Rule 801(d)(2)(E) unavailable to admit his messages directly. Nevertheless, certain of the undercover agent's messages may be admissible if it is shown that a coconspirator—A.A.—adopted the undercover officer's statements.

Therefore, Defendant's Motion in Limine to Exclude Photographs of Text Messages (ECF No. 70) is DENIED as stated.

2.  **Previous Backpage.com Postings**

Mr. Brown seeks to exclude an assortment of Backpage.com posts from June through September 2015, six to nine months before the incident alleged in the indictment. Mr. Brown asserts that these ads are irrelevant under Rule 401, unfairly prejudicial under Rule 403, and represent impermissible character evidence under

---

[3] The Court is not able to determine whether the government can properly authenticate the photographs of the text messages and leaves that proof to the government at the time it seeks to introduce the evidence.

3

Rule 404(b). The government counters that this evidence is "intrinsic to the crime" charged and therefore admissible, and that it is not impermissible under Rule 404(b). *See United States v. Epstein*, 426 F.3d 431, 439 (1st Cir. 2005).

The ads from months earlier are not intrinsic to this crime. The crime charged is "knowingly transport[ing] an individual in interstate commerce . . . with intent that the individual engage in prostitution" in March 2016. ECF No. 3. These ads, which are remote in time and not similar in content to the ads involved in the crime charged, do not tend "to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Moreover, it is not permissible Rule 404(b) evidence because this remote evidence does not have a "special relevance" to any issue to be decided in this case. *See United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000).

Therefore, Defendant's Motion in Limine to Exclude Irrelevant Backpage.com Postings (ECF No. 73) is GRANTED.

3. **A.A.'s Statement**

Mr. Brown gave notice of his intent to introduce a transcript of an interview between police officers and A.A. that took place after A.A. was arrested and charged with prostitution. ECF No. 74. Mr. Brown seeks to admit A.A.'s statement under Rule 806 in response to the admission of the text messages discussed above in section 1.[4] Mr. Brown also argues that A.A.'s statement is admissible under Rule 106's "rule

---

[4] Federal Rule of Evidence 806 provides that, when a hearsay statement is admitted under Rule 801(d)(2)(E) (among other rules), the "declarant's credibility may be attacked . . . by any evidence that would be admissible for those purposes if the declarant had testified as a witness."

4

of completeness." The government objects and moves in limine to exclude the transcript. ECF No. 80. It argues that the only possible ground for admitting the transcript would be as a prior inconsistent statement, and that the text messages and her statement are consistent.

The transcript, or portions of it, may be admissible under either Rule 106 or 806, but the Court cannot make that determination pretrial. If the evidence is such that the transcript "in fairness ought to be considered at the same time," then it will be admissible under Rule 106. If the transcript presents evidence that tends to attack the credibility of A.A. or proves to be inconsistent with a matter presented at trial concerning A.A., then the transcript will be admissible under Rule 806.

Therefore, the government's Motion in Limine to Exclude A.A.'s Statement (ECF No. 80) is DENIED as stated.

4. **Photographs of Mr. Brown with A.A. and Another**

Mr. Brown objects to the government's introduction of a photograph showing Mr. Brown with A.A. and another woman. The government seeks to introduce the photograph to show that Mr. Brown knew A.A. Mr. Brown objects, asserting that the photograph would play into racial stereotyping about African American men as "sexual exploiters" of white women, and thus, would be unfairly prejudicial.

Federal Rule of Evidence 403 allows the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury . . . or needlessly presenting cumulative evidence." The photograph here is unfairly prejudicial to

5

Mr. Brown because of its sexualized and potentially racial nature. The government has charged him with a crime that involves sex and the photograph could inappropriately prejudice him on this topic. Moreover, the government has other non-prejudicial ways of proving its assertion that Mr. Brown and A.A. knew each other, including testimony from police officers that the officers saw them in the car together.

Therefore, Defendant's Motion in Limine to Exclude Photographs of A.A. with Another (ECF No. 75) is GRANTED.

5. <u>More Specific Response From the Government</u>

Mr. Brown asks the government to be more specific in its identification of certain items of evidence. ECF No. 76. The government responded with specificity. ECF No. 79. Therefore, Mr. Brown's Motion for More Specific Responses (ECF No. 76) is DENIED AS MOOT.

6. <u>Government's "Third Last-Minute Disclosure of Evidence"</u>

The last motion before the Court (ECF No. 83) is the most involved and requires a more detailed recitation of facts and procedure.

*Facts*

A grand jury indicted Mr. Brown on October 11, 2016—over a year and a half ago—with one count of knowingly transporting an individual across state lines to participate in prostitution in violation of 18 U.S.C. § 2421 and aiding and abetting such acts in violation of 18 U.S.C. § 2.[5] ECF No. 3. The Court arraigned him the

---

[5] The State of Rhode Island had originally charged Mr. Brown in February 2016 with essentially the same crime.

6

following day. Five days later, on October 17, 2016, Mr. Brown's attorney sent a letter to the government, requesting discovery.[6] ECF No. 85-1. The Court's Arraignment Order required the government to respond to Mr. Brown's discovery requests "[w]ithin 5 days of" the request. ECF No. 5 at 1. The government did not respond.

On November 2, 2016, Mr. Brown's attorney sent a second request for discovery.[7] ECF No. 85-2. The government again did not respond within the time ordered by the Court. On December 8, 2016, fifty-two days after Mr. Brown's first request for discovery, "the government made the first of many discovery disclosures to the defendant through DOJ's cloud-based platform." ECF No. 84 at 1.

After the Court sent out its first trial notice (ECF No. 12), Mr. Brown requested a continuance (ECF No. 13), in part to allow "additional time . . . to confer with the government following the defense's review [of] the discovery." The Court granted this request as well as subsequent requests the following two months. ECF No. 17; ECF No. 22 ("additional time is needed as the government has indicated supplemental discovery is forthcoming").

On March 21, 2017, the government further supplemented its production of

---

[6] The letter requested, *inter alia*, "Reports of Examinations and Tests – Any results or reports of physical or mental examinations, and of scientific tests or experiments material to the case including but not limited to any DNA or fingerprint analysis, which are known to, or by the exercise of due diligence may become known to, the government." ECF No. 85-1 at 2.

[7] The second letter requesting discovery mimicked the first one. It mistakenly had the old date on it, but was actually sent on November 2, 2016, and was received by the government on November 7, 2016. ECF No. 85 at 2 n.1.

discovery. In this production, the government disclosed a "Cellebrite[8] report" of information that Detective Robert Grasso of the Cranston Police Department extracted from Mr. Brown's cellphone at the time of his arrest. ECF No. 84 at 2–3. The extraction had taken place over a year earlier on March 9, 2016. ECF No. 83 at 3. The government disclosed further discovery (and *Jencks* material) on April 7, 2017. ECF No. 84-1 at 102.

Mr. Brown requested a trial continuance on May 2, 2017 (ECF No. 25), and again on May 24, 2017 (ECF No. 28), because "additional time [was] needed to review . . . the supplemental discovery that was provided by the government." ECF Nos. 25, 28.

On July 6, 2017, Mr. Brown filed a plea agreement. ECF No. 32. On July 25, 2017, during the course of the plea colloquy with the Court, Mr. Brown did not agree with the facts as stated by government and the hearing ended without a change of plea.

Two months later, on September 12, 2017, the government provided further discovery. ECF No. 84-1 at 105. The discovery included "a 41-page document that purported to be cellphone records from TracFone Wireless Inc. regarding a prepaid cell phone that was seized from A.A. at the time of her arrest." ECF No. 47 at 3. Mr. Brown alleges that the documents had been in the government's possession for

---

[8] Cellebrite is a company that manufactures data extraction, transfer, and analysis devices for cellphones and mobile devices. ECF No. 83 at 3 n.1. It "makes mobile device evidence extraction available on two different platforms." ECF No. 84-1 at 7.

months, but that it did not turn them over until the eve of trial.⁹ *Id.*

On September 22, 2017, Mr. Brown filed a Motion to Compel.¹⁰ *Id.* He alleged that the government's "[i]nitial discovery was late and incomplete." *Id.* at 3. He further alleged that the government "demonstrated a pattern of dumping discovery on the defense on the eve of trial."¹¹ *Id.* Mr. Brown asked the Court "to order the prosecutor to produce the Cellebrite cell phone extraction report forthwith [and if] the evidence is not timely produced, the Court should prohibit the government from introducing it at trial." *Id.* at 5. In response, the government re-produced all discovery, including the Cellebrite report of the information extracted from the phone. The government did not oppose the motion to compel and the Court granted it on October 10, 2017 via Text Order.¹²

---

⁹ On September 13, 2017, the government advised Mr. Brown that its December 7, 2016 production of screen shots from A.A.'s phone was incomplete. ECF No. 84-1 at 108. The government then produced to Mr. Brown additional photos of outgoing text messages from A.A.'s phone's. *Id.*

¹⁰ On September 14, 2017, the government had filed a Motion to Compel (ECF No. 43) requesting that Mr. Brown provide reciprocal discovery that it had requested in December 2016 under Federal Rule of Criminal Procedure 16(b). The Court denied that motion. Text Order, Oct. 10, 2017. Mr. Brown had asserted that the government's motion was "frivolous and should be summarily denied." ECF No. 48 at 1.

¹¹ The government provided discovery on September 12, 2017; a pretrial conference had been scheduled for two days later. ECF No. 47 at 3.

¹² The government explains: "Around this time, defense counsel filed a Motion to Compel discovery, and complained that discovery that the government believed had long ago been given to her was never provided. It was at this time that the government learned that, at administrative offices in Washington, the automated email notification system (i.e., that which notified counsel that new material had been uploaded) had been disabled. . . . On September 28, 2017, in response to this problem, as well as defense counsel's allegations that she did not get all of the discovery she

9

In October and each of the next three months, Mr. Brown, with the assent of the government, moved for trial continuances. ECF Nos. 52, 56, 59, 62. On February 9, 2018, the Court sent out a trial notice notifying the parties that trial would begin in March 2018. ECF No. 67; *see* Text Order, Feb. 28, 2018.

At some point, the government learned that Detective Grasso was unavailable to testify at trial, and it had Cranston Detective William Palmer reimage Mr. Brown's phone and prepare a new report, which the government sent to Mr. Brown on February 23, 2018. ECF No. 84 at 9.

On March 6, 2018, the government provided Mr. Brown's attorney another new Cellebrite report on Mr. Brown's cellphone. ECF No. 83-1. This new report was different from its predecessors. As the government explains:

> About February 28, 2018, the government spoke to an experienced Warwick Police Detective, Timothy Grant. Det. Grant has performed hundreds of Cellebrite extractions and explained that the reports that had been previously generated (by Dets. Grasso and Palmer) were "Logical" reports as opposed to "Physical" reports. Neither the prosecutors nor the agents working on the case were aware of such a distinction. Det. Grant explained that the "Physical" report is more comprehensive, and would account for a bit-for-bit reproduction of the data on the phone. Det. Grant prepared such a report from the defendant's phone.

ECF No. 84 at 3 (footnote omitted).

The government points out that this new Cellebrite report captured much more than the previous report, including extensive data on Mr. Brown's location, cell tower locations, text messages, Facebook conversations, and web browsing history. *Id.* at

---

was entitled to, the government re-produced the entirety of the discovery it had, in order to make doubly sure that counsel had all of the materials." ECF No. 84 at 8.

3–5. The government told Mr. Brown's attorney that most of the cellphone information the government had intended to use in court at the upcoming trial was "not readily discernible" from the previously disclosed report and that the previous report "omits a fair amount of detail." ECF No. 83-1. The government describes this new, 4,693-page report as "highly-probative evidence." ECF No. 84 at 1; ECF No. 85 at 1.

Mr. Brown now moves to exclude this newly disclosed Cellebrite report. ECF No. 83. Mr. Brown claims the Court should exclude this report because of its late disclosure after a long period of late and incomplete disclosures by the government. *Id.* The government responds by claiming that this information was only recently discovered, that they would not object to a continuance of the trial to allow Mr. Brown time to review the report, and that they were not slow in providing discovery. ECF No. 84.

*Analysis*

Under Federal Rule of Criminal Procedure 16(d)(2), if a party fails to comply with its discovery obligations, the court may:

(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;

(B) grant a continuance;

(C) prohibit that party from introducing the undisclosed evidence; or

(D) enter any other order that is just under the circumstances.

"In criminal cases, the government has broad disclosure obligations." *United States v. Kifwa*, 868 F.3d 55, 60 (1st Cir. 2017). "[T]he government's disclosures must be

made in a timely manner." *Id.* The Court must ultimately consider what is just under the circumstances. *See* Fed. R. Crim. P. 16(d)(2).

The central issue here is whether the late produced "physical" Cellebrite report should be excluded. However, the late disclosure of this report must be taken in the context of a history of discovery from the government that was at best slow, sporadic, and untimely. For example, five days after the Court arraigned Mr. Brown, he sent a letter to the government requesting discovery. ECF No. 85-1. Instead of responding within the five days ordered by the Court (ECF No. 5), the government responded fifty-two days later. ECF No. 84 at 1. Additionally, this response does not appear to have included the first cellphone report conducted by the Warwick Police in March 2016. *See* ECF No. 84-1 at 138–39. This response was neither timely nor complete. Moreover, it violated this Court's order on timeliness. The government does not explain the incomplete or late disclosure, or why it ignored this Court's order concerning when its disclosures were due.

The late disclosures continued. About three months later—and a year after the alleged incident occurred—the government disclosed another round of information to Mr. Brown, now including the report extracted from Mr. Brown's phone over a year earlier. Then, six months later, and two days before the Court's pretrial conference, on September 12, 2017, the government turned over a further batch of discovery, this time including another forty-one-page analysis of Mr. Brown's cellphone. Understandably, Mr. Brown's frustration led him to file a motion to

compel, including for the phone report, which Mr. Brown argues he never received. The government subsequently re-produced all of the discovery to Mr. Brown.

Now, in March of this year, the government—for the first time—disclosed an in-depth "physical" report of the phone which contained extremely detailed information not previously disclosed. Although the government argues that it did not have this report in its possession any earlier, it most certainly had Mr. Brown's phone, and had every opportunity over the preceding two years to conduct this analysis. Although there is no evidence the government acted intentionally or in bad faith in producing this report, this late production comes at the end of a long series of late disclosures, concerns evidence that the government admits is crucial to its case, and runs contrary to the purpose of Rule 16 of the Federal Rules of Criminal Procedure.

The timely disclosure requirement of Rule 16 is only effective if the government timely analyzes and tests the evidence it has in its possession. This is the only way to ensure that the discovery process proceeds fairly, justly, and effectively. Due diligence on the part of the government is an implicit requirement of Rule 16. If the government were allowed to sit on evidence, and wait until the last minute to analyze the evidence, and then claim the results just came into their possession, it would blow a huge hole in the government's disclosure obligation under the rules.

Mr. Brown's phone had been in the possession of the government for two years. The government knew it needed to extract information from the phone in order to prove its case; it describes the information contained in the phone as central to its

case. However, the government failed to run the proper test on the phone in a timely fashion. While the government argues that the original two police officers simply failed to do a full analysis of the phone, that does not relieve the government of its responsibility to act with due diligence in obtaining the evidence necessary to prove its case in a timely fashion and turning it over to the defendant.

Considering the government's lack of diligence in timely analyzing the evidence in its possession, the history of late disclosures in this case, the defendant's right to discovery under Rule 16, as well as the defendant's right to have his charges expeditiously adjudicated, the Court concludes that the "physical" Cellebrite report recently disclosed to the defendant should be excluded under Rule 16(d)(2).

\*     \*     \*

For the foregoing reasons, the Court:

1. DENIES as stated above Mr. Brown's Motion in Limine to Exclude Photographs of Text Messages (ECF No. 70);

2. GRANTS Mr. Brown's Motion in Limine to Exclude Irrelevant Backpage.com Postings (ECF No. 73);

3. OVERRULES the government's objection to Mr. Brown's Notice of Intent to Offer A.A.'s Statement (ECF No. 74) and DENIES its Motion in Limine to Exclude A.A.'s Statement (ECF No. 80) as stated;

4. GRANTS Mr. Brown's Motion in Limine to Exclude Photographs of Mr. Brown with A.A. and Another (ECF No. 75);

5. DENIES AS MOOT Mr. Brown's Motion for an Order Directing the Government to be More Specific (ECF No. 76); and

6. GRANTS Mr. Brown's Motion in Limine to Exclude the Third Last-Minute Disclosure of Evidence (Cellebrite Report) (ECF No. 83).

IT IS SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge

April 18, 2018